William Russell, for petitioners.
George Gorham, for respondent.

## Case No. 16,824.

### Ex parte VAN AERNAM.

#### [3 Blatchf. 160.] 1

Circuit Court, S. D. New York.    April, 1854.

EXTRADITION—COMMITMENT BY COMMISSIONER—HABEAS CORPUS—AUTHORITY OF COURT.

1. On a habeas corpus, sued out by a prisoner who is held under a warrant of commitment issued by a United States commissioner, ordering him to be detained and given up to the British authorities, as a fugitive from justice from Canada, under the treaty of Washington of August 9, 1842 (8 Stat. 572, 576), this court cannot review the merits of the decision made by the commissioner, either on the facts or the law.
[Cited in Ex parte Lange, 18 Wall. (85 U. S.) 205; Re Henrich, Case No. 6,369; Re Macdonnell, Id. 8,772; Re Stupp, Id. 13,563; Re Morris, 40 Fed. 825.]

2. If the commissioner had no jurisdiction of the case, or if there was no legal evidence before him tending to prove the accusation, or if the mandate of the president for the arrest of the prisoner was issued without warrant of law, the court will discharge him. But it will not inquire whether the commissioner erred in deciding that the offence charged was committed by the prisoner or was an offence within the treaty.

3. The courts of the United States have no authority, on a habeas corpus, to inquire into the merits of a decision made by a committing magistrate, and to determine that he erred in his construction of the law or the evidence. It will only inquire whether the prisoner stood

1 [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

charged before the magistrate with a criminal offence subjecting him to imprisonment, and whether the magistrate possessed competent authority to inquire into and adjudge upon that complaint.

This was a writ of habeas corpus, returnable to this court, commanding the marshal to produce the body of Daniel W. Van Aernam. The prisoner was brought into court on the writ, and the marshal filed his return, setting forth that Van Aernam was held by him under a warrant of commitment issued by a United States commissioner (George W. Morton), which ordered the prisoner to be detained and given up to a person authorized to receive him on behalf of the authorities of Canada, as a fugitive from justice, whose extradition had been demanded and adjudged under the provisions of the treaty between the United States and Great Britain of August 9, 1842 (8 Stat. 572, 576), commonly called the "Treaty of Washington."

Theodore Romeyn, for prisoner.
Charles Edwards, for British authorities.

BETTS, District Judge. The prisoner was committed for uttering and publishing in Canada a certain forged order or bank draft, purporting to be drawn by the cashier of the Hamilton Exchange Bank, at Hamilton, Madison county, New York, on the cashier of the Troy City Bank, at Troy, New York, for $5,000, payable to the order of the prisoner.

The facts which appeared before the commissioner, on which the prisoner was arrested and detained, are agreed to on both sides. The draft in question was false and fabricated. The prisoner was a party concerned in fabricating it. He was a resident of the state of New York at the time he took the draft into Canada. He there passed it as genuine, and received $5,000 cash for it, and returned, with the money, to this state. He was regularly charged before a magistrate in Canada with the crime of uttering and publishing a forged draft, knowing it to be forged, with intent to defraud the party from whom he obtained the money. No exception is taken to the regularity of any of the subsequent proceedings by the British authorities and within the United States, to reclaim the prisoner and take him back into Canada for trial upon that accusation, according to the provisions of the treaty of 1842 between the United States and Great Britain.

The objection raised, under the habeas corpus, to the extradition of the prisoner is, that the false making of the draft was not a forgery, but a fraud only, or the creation of a false token, and that the uttering, or publishing of the instrument is not one of the crimes named in the treaty, for which the prisoner can lawfully be arrested in this state, and be delivered over to the British authorities. Under this proposition, various points have been debated by counsel—whether the criminality of the prisoner's act was to be

determined by the laws of New York or by those of Canada—or whether, in order to authorize his arrest and extradition, forgery within the laws of both governments must be proved to have been committed. In the same connection, various collateral questions deserving of notice have been discussed. But the paramount consideration is—What are the character and extent of the authority of the court over these questions, under a writ of habeas corpus?

In my opinion, this court cannot sit in review on the merits of the decision made by the commissioner, either on the facts or the law. If the commissioner had no legal jurisdiction over the case, or if the mandate of the president under which the prisoner is more immediately confined, was issued without warrant of law, it is the duty of the court to discharge him. It is not disputed that the commissioner was empowered to inquire whether the crime of which the prisoner was accused had been committed by him, nor is it disputed that legal evidence was laid before him tending to prove the accusation, nor is it disputed that the commissioner, on the facts so placed before him, found that the prisoner had committed the offence. The exception to his action is, that he misjudged in point of law, and that the crime was not established by the evidence. If so, this, manifestly, was an error in judgment on the part of the commissioner, but it does not show that he had no jurisdiction. And, if the case were now before the court on writ of error or appeal, the decision of the commissioner would be a legitimate subject for its investigation. But, whatever the local law of the state may be, the courts of the United States have, in my judgment, no authority, under a writ of habeas corpus, to inquire into the merits of a decision made by a committing magistrate, and to determine that he erred in his construction of the law or the evidence. Under the criminal jurisprudence of the United States, that power belongs to a court or a jury when afterwards required to act on the accusation. Grand juries constantly dismiss accusations against prisoners, when examining the proofs on which they were committed by magistrates. Courts overrule the law as declared by magistrates when authorizing the arrest of parties, and also their construction of facts, although affirmed by the presentments of grand juries. Yet such considerations never entitle a prisoner to have his case tried under a habeas corpus, and to receive a discharge, if a judge thinks that there was not enough made out against him on the accusation to warrant his commitment.

Neither the constitution nor the statutes of the United States prescribe or define the qualities of the writ of habeas corpus ad subjiciendum, or the powers of the court or magistrate thereon, on its return. It was a common law process in use at the time of the American Revolution, (though largely varied in its incidents, if not also in its effects, by statutory provisions at home), and was brought by our ancestors with them when they emigrated to America, and became a part of our domestic jurisprudence, in its common law attributes, so far as it was applicable to the situation of the emigrants, and not repugnant to the local and political circumstances in which they were placed. Livingston v. Jefferson, [Case No. 8,411]; 1 Story, Const. pp. 132, 133, §§ 148, 149. The general proposition is, however, to be understood with many restrictions. 1 Story, Const. 133.

The main changes made by parliament in the common law writ consisted in provisions for its prompt enforcement, and did not purport to vary its intrinsic powers. The writ, in the form in which it was used in England at the time of our Revolution, had been incorporated into the positive law of this state, and of several other states, at the time of the adoption of the constitution of the United States, and of the passage of the judiciary act of 1789 (1 Stat. 81, § 14), which recognized the writ, and imparted to the courts of the United States power to use it; and was substantially in force in this and other colonies, anterior to their formation into independent states, in the same form in which it was employed in England. 2 Kent, Comm. 26–33, and notes.

It is not important to consider how far such long usage, or the course of local legislation, may be admissible evidence conducing to show that the writ of habeas corpus, in the form then existing, was contemplated as the process adopted by the constitution or the act of 1789, because, neither the English nor the American statutory enactments had at that time varied, in any important features, the writ as known to the common law. Fitzh. Nat. Brev. 250; Cowell, Law Dict. (1727), "Habeas Corpus"; 3 Bl. Comm. 131; Bac. Abr. "Habeas Corpus," B, 10. The legislation in the state of New York, and in other states, since 1818, may have introduced changes, which may give to the writ employed in the courts of such states, all the scope and efficiency attached to the common law writ, when accompanied, as attendant upon its return, by a certiorari or writ of error, or when heard and executed, on its return, by a court having supervision over the whole proceedings before the tribunal which ordered the commitment sought to be relieved from. Such subsequent state laws cannot, proprio vigore, affect the process or proceedings of the courts of the United States. They are obligatory only so far as they are adopted by congress. Beers v. Haughton, 9 Pet. [34 U. S.] 329; Keary v. Farmers' & Merchants' Bank of Memphis, 16 Pet. [41 U. S.] 89.

In my view of the subject, this court, on the return before it of a writ of habeas corpus, has no further power than to ascertain and determine whether the prisoner stands charged with a criminal offence subjecting him to imprisonment; and whether the com-

missioner possessed competent authority to inquire into and adjudge upon that complaint. I find affirmatively, in this case, on both those inquiries, and therefore decide that I have no authority, under this writ, to review the justness of the decision of the commissioner. The president, therefore, had due authority for the warrant issued by him for the extradition of the prisoner.

The court, if acting as the committing magistrate in this instance, might have doubted whether the law, properly interpreted, would support a charge of forgery for the fabrication of the draft in question, and might have declined to commit the prisoner on the charge; but it possesses no authority to re-judge that point, on this writ. The farthest the court could go, under this writ of habeas corpus, after ascertaining that there was legal proof before the magistrate tending to support the accusation, would be to bail the prisoner, if this particular case were bailable; and the judges in Canada may, in their discretion, grant the same relief.

It cannot affect the opinion of the court under this writ, that the accusation may not be supported on a trial. It is only to determine whether the prisoner is confined in conformity to the law of the land. His innocence is presumed, in law, notwithstanding his imprisonment and his indictment; and it would be a most unsafe guide, for a judge, on a habeas corpus, to be governed by any regard to the question of the guilt or innocence of the accused. Most clearly, such a consideration cannot control the liability of a fugitive from justice to be returned to the place where he committed the alleged crime. He is sent back for the purpose of enabling the tribunal of the country in which the supposed offence was committed, to determine, on a public trial, whether he is guilty of it. The instance of Heilbronn, recently delivered in this state to the English authorities, and acquitted on his trial, after his return, affords no argument for restraining the extradition power. He was returned, not to insure his conviction, but to subject him to trial for an alleged crime. The grand inquest found cause for the accusation, because, after his extradition, he was indicted for forgery. But, on the traverse of the indictment and a full hearing of the case, the court decided that the law did not authorize his conviction. That is the proper forum for the consideration and determination of that question; and not before a judge on habeas corpus, any more than before the committing magistrate. The opposite principle would arrogate to a judge at chambers the functions and duties of a court on solemn trial.

If the papers before me showed that the prisoner was committed by a state magistrate in this state, and was also indicted by a grand jury for the offence charged against him on this application, namely, for uttering a bank draft of exactly the same character, and also for forging the paper, I would

not, under the common law acceptation of the functions of the writ of habeas corpus, be authorized to examine the merits of his commitment, and discharge him, upon my opinion that the charge could not be supported on the trial. If this court were well convinced that an indictment could not in the present case be maintained in Canada, or if it were satisfied that one would not be preferred, that consideration would not justify the discharge of the prisoner by habeas corpus. Clearly, it would not, if he were under arrest for a violation of the laws of the United States. And there would seem to be hardly a ground for question, that the treaty compact rests upon the principle, that with regard to the enumerated class of offences, each of the contracting parties is, within its own dominions, to execute its own laws in respect to the offender, and to determine, under those laws, the guilt or innocence of the accused. In this case, the result would be the same, therefore, whether the law of the state of New York, or the law of England, is to supply the definition of the offence. The committing magistrate has adjudged that there was satisfactory proof of the commission of the crime charged; and this court, on the facts admitted, sees that there was probable cause, on the legal evidence before the magistrate, for the decision he made.

An order must accordingly be entered discharging the writ of habeas corpus allowed in this case.